IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SEAN P. JOHNSTON,<br><br>        Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF<br>CORRECTIONAL SERVICES, et al.,<br><br>        Defendants. | 4:06cv3040<br><br>MEMORANDUM AND ORDER |

This matter is before the court on filing nos. 10, 11, and 25, the defendants' Motions to Dismiss. In his Amended Complaint (filing no. 4), the plaintiff, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), has sued employees of DCS responsible for inmate classification decisions placing and retaining the plaintiff on Administrative Confinement (a form of segregation), despite evidence of his innocence of wrongdoing and despite the pain and suffering experienced by the plaintiff in segregation after back surgery. The plaintiff, who is represented by counsel, alleges that the defendants violated his procedural and substantive rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and that they subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

The plaintiff sought release from Administrative Confinement in the state courts under the Nebraska Administrative Procedure Act. However, the Nebraska Supreme Court in <u>Johnston v. Nebraska Dept. of Correctional Serv.</u>, 709 N.W.2d 321 (Neb. 2006), dismissed the plaintiff's claim as moot in light of his transfer to another institution and his placement back in the general prison population. <u>Id</u>. at 324-25. In the state proceeding

1

(unlike this case), Johnston had not requested damages, id. at 324.  In this case, the plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1985, and he seeks monetary, injunctive and declaratory relief from the defendants in their individual and official capacities.[1]

The facts as alleged in the Amended Complaint, briefly summarized, indicate that on April 24, 2004, the plaintiff received Misconduct Report # 2420, which resulted in his placement on Immediate Segregation ("I/S") in the Control Unit of the Nebraska State Penitentiary ("NSP").  However, on May 27, 2004, an Institutional Disciplinary Committee dismissed the charge for lack of evidence.

Instead of release into the general population, the plaintiff was retained on I/S at the behest of Unit Manager Randy Crosby "for the good order of the facility."  Proceedings then ensued to place the plaintiff on Administrative Confinement ("A/C"), a security classification involving nondisciplinary segregation, for 90 days.  For all practical purposes, not much difference, if any, exists among I/S, A/C and any other kind of segregation at the NSP.  Prior to the plaintiff's periodic review on A/C, Crosby, who allegedly had some kind of vendetta against the plaintiff, arranged for another six-month extension of the plaintiff's A/C. Finally, on July 19, 2005, without ever emerging from A/C at the NSP, the plaintiff was transferred to the State's maximum security prison, the Tecumseh State Correctional

---

[1]Procedurally, the state Administrative Procedure Act does not apply to this action in federal court.  However, the plaintiff's concern that the principles expressed in Heck v. Humphrey, 512 U.S. 477 (1994), might bar him from bringing this case under 42 U.S.C. § 1983 is unfounded.  Because his placement in segregation involved no loss of good-time credit, this is not the kind of litigation under § 1983 which would call into question the lawfulness of the plaintiff's continued custody.  Therefore, Heck v. Humphrey creates no bar to the plaintiff's claims.

Institution, where he resides in the general population. Thus, the plaintiff spent over a year in segregation, without ever having been convicted of any misconduct.

## Due Process (Procedural and Substantive)

Nevertheless, the plaintiff's due process claim must fail, as the Due Process Clause is not implicated in the circumstances of the plaintiff's case. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*), cert. denied, 528 U.S. 966 (1999).

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope, or expectation. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459 (1989). A protected liberty interest may arise from either the Due Process Clause of the U.S. Constitution, itself, or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

Liberty Inherent in the Due Process Clause

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. Lekas v. Briley  405 F.3d 602, 607 (7th Cir. 2005).  See also Holly v. Woolfolk, 415 F.3d 678, 679 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process"), cert. denied, 126 S.Ct. 1166 (2006). Accord Christianson

3

v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody.").

State-Created Liberty Interest

Consequently, the plaintiff's liberty interest, if any, must emanate from state law. The plaintiff's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). "Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" Wilkinson v. Austin, 125 S.Ct. at 2394, *quoting* Sandin, 515 U.S. at 485. In Sandin, the Court substantially narrowed the circumstances in which a state-created liberty interest arises:

> The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause .... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted). Therefore, to demonstrate a liberty interest created by state law, the plaintiff must show that the protested conditions exceed the normal range and limits of custody and impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

However, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin."

4

Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002). Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship. Id. See also Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (administrative confinement for 15 months did not impose an atypical and significant hardship). Similarly, in Jones v. Baker, 155 F.3d 810, 813 (6th Cir. 1998), the Sixth Circuit did not consider confinement in administrative segregation for two and one-half years an atypical and significant hardship.

In Nebraska, deprivation of good-time credit implicates a liberty interest sufficient to require due process. Dailey v. Nebraska Dept. of Corr. Servs., 578 N.W.2d 869, 873 (1998). See generally Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) (when a state provides a right to good time and specifies the methods of forfeiture, an inmate has a constitutionally-protected liberty interest entitling him or her to procedures designed to ensure that the state-created right is not arbitrarily abrogated).

On the other hand, the Nebraska courts have rejected the argument that segregation alone constitutes an atypical and significant hardship giving rise to a liberty interest under state law. See, e.g., Martin v. Curry, 690 N.W.2d 186, 192 (Neb. App. 2004) (inmate had no clearly established liberty interest when prison officials extended his tentative release date from disciplinary segregation and placed him on administrative

confinement). See also Thompson v. Nebraska Dept. of Correctional Services, 2002 WL 857327 at *6 (Neb. App. May 7, 2002): "Thompson has no protected liberty interest that was violated by her placement in disciplinary segregation. Disciplinary segregation alone is not an atypical and significant hardship, and Thompson does not have a state-created right that is being arbitrarily abrogated, because her good time is not affected."

Consideration of Dismissed Misconduct Report

The dismissal of misconduct charges does not render the underlying information irrelevant to the assessment of prison security risks. See generally Hewitt v. Helms, 459 U.S. at 474:

> As we said in Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981), "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." In assessing the seriousness of a threat to institutional security prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely subjective evaluations and on predictions of future behavior," ....

(Citation omitted.) Therefore, the plaintiff had no constitutional right to prevent the defendants from considering information in dismissed charges when making a classification decision.

**Cruel and Unusual Punishment**

The plaintiff states that after he had back surgery, he spent a short period in the NSP medical clinic, but then was forced to return to the Control Unit. He alleges, without

6

details, that the conditions on A/C were so bad that his back failed to heal; his condition deteriorated, and he now requires additional surgery.

The plaintiff may be alleging a claim of deliberate indifference to a serious medical condition, under the Eighth Amendment to the U.S. Constitution. "Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment .... To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that [the defendants] knew of the need but deliberately disregarded it." Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006) (citations omitted).

On the other hand, the plaintiff may be alleging some other theory of liability. At this point in the proceedings, a claim should be liberally construed in the light most favorable to the plaintiff and should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). See also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513 (2002), *citing* Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993): "In Leatherman we stated: '[T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983. *Expressio unius est exclusio alterius*.'" (Emphasis in original.)

Thus, in summary, the plaintiff's dismissed action under the state Administrative Procedure Act does not bar his civil rights claims in this court; nor does Heck v. Humphrey, 512 U.S. 477 (1994). Filing nos. 10, 11, and 25, the defendants' Motions to Dismiss, are

7

granted in part and denied in part as follows: The plaintiff's Due Process claim is dismissed for failure to state a claim on which relief may be granted. On the other hand, the defendants shall answer or otherwise respond to the plaintiff's Eighth Amendment claim within thirty days of the date of this Memorandum and Order.

SO ORDERED.

DATED this 30th day of August, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge